OPIAL et al., Appellants,

v.

CITY OF ROSSFORD et al., Appellees.

[Cite as *Opial v. Rossford* (1996), 116 Ohio App.3d 588.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–96–023.

Decided Dec. 6, 1996.

*Frank I. Zygela,* for appellants.

*Renisa Dorner* and *Joan Szuberla,* for appellees.

ABOOD, Judge.

This is an appeal from a judgment of the Wood County Court of Common Pleas that granted appellees' motion for summary judgment, denied appellants' motion for summary judgment, and dismissed appellants' complaint for damages resulting from the death of appellant Judy Opial's husband, John Opial.

On appeal appellants, the estate of John Opial and Judy Opial, set forth the following as their sole assignment of error:

"The trial court improperly applied statutory immunity to preclude plaintiff-appellant's [*sic*] wrongful death claim. As a result, the trial court erred in granting defendants-appellees' motion for summary judgment."

The undisputed facts which are relevant to the issues raised on appeal are as follows. On January 30, 1994, appellant Judy Opial's husband, John, became ill. Judy, a registered nurse, suspected that her husband was having a heart attack and summoned the Rossford Emergency Medical Service ("EMS") unit. Rossford EMS personnel were unable to revive John through cardiopulmonary resuscitation, and he died. The parties agree that the EMS unit was not equipped with a defibrillator, a device which sends electric shocks to the heart to revive it.

On January 30, 1995, appellants filed the complaint herein against appellees the city of Rossford; the Mayor of Rossford, Mark G. Zuchowski; city Councilpersons Robert Watrol, Walter Fedal, Pat Carson, Molly Jukubec, and James Richards; and "John or Jane Doe," in which they alleged that (1) John Opial's death was proximately caused by appellees' "reckless, negligent and/or willful acts" of not equipping the EMS vehicle with a defibrillator; (2) appellees made

"false and misleading representations" that the Rossford EMS unit would respond promptly with "advanced life saving equipment sufficient to properly handle a cardiac arrest"; and (3) appellees' failure to equip the EMS unit with a defibrillator violated R.C. Chapter 1345, the Ohio Consumer Sales Practices Act. On March 16, 1995, appellees filed an answer in which they asserted as an affirmative defense that appellants' claims "are barred by the doctrine of sovereign immunity pursuant to Ohio Revised Code Section 2744.01, etc."

On December 7, 1995, appellees filed a motion for summary judgment and memorandum in support thereof, in which they argued that (1) "[a]ll decisions regarding the acquisition of equipment were made in good faith," and (2) they are immune from suit pursuant to R.C. 2744.02(A). In support thereof, appellees relied on the affidavit of Robert P. Watrol, President of the Rossford City Council, in which he stated that (1) appellees never "affirmatively made a decision not to acquire defibrillators"; (2) appellees relied on the recommendations of the city fire chief and city medical director in deciding what equipment to purchase for the Rossford EMS; (3) at the time of John Opial's death, the Rossford EMS unit "was not licensed for Advanced Life Support"; and (4) appellees made "all decisions regarding the acquisition of equipment for the EMS * * * in good faith and not for any malicious purpose."

On January 5, 1996, appellants filed a "BRIEF IN OPPOSITION TO [APPELLEES'] MOTION FOR SUMMARY JUDGMENT AND MOTION FOR SUMMARY JUDGMENT" and a memorandum in support thereof, in which they argued that (1) appellees are not immune because R.C. Chapter 2744 is inapplicable in this case; (2) appellees had a "public duty" to equip the Rossford EMS unit with defibrillators; (3) even if R.C. 2744.02(A) applies, appellees' actions are excepted from immunity pursuant to R.C. 2744.02(B)(4); and (4) alternatively, appellees are not immune from liability pursuant to R.C. 2744.03(A) because their actions constituted "willful and wanton misconduct." In support thereof, appellants attached the affidavits of Judy Opial and attorney Frank I. Zygela. In her affidavit, Opial stated that she had attended several meetings of the Rossford City Council, at which it had refused to purchase a defibrillator for the EMS unit. In his affidavit, Zygela stated that he is appellants' attorney and that attached to his affidavit are "true copies" of (a) a transcript of portions of the October 23, 1995 radio broadcast of "All Things Considered," (2) two articles published by the Institute for Critical Care Medicine containing information on defibrillation, and (3) "relevant portions of an article on early defibrillation that appeared in the August 1990 edition of the ASTM Standardization News."

On January 23, 1996, appellees filed a "MEMORANDUM IN OPPOSITION TO [APPELLANTS'] MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE," in which they argued that (1) they have immunity for the

"governmental function" of deciding whether or not to purchase a defibrillator for the EMS unit pursuant to R.C. 2744.02(A), and (2) the documents attached to Zygela's affidavit should be stricken because they "constitute inadmissible hearsay," Zygela is not competent to testify as to their authenticity, and Zygela has no personal knowledge as to their contents. On January 29, 1996, appellants filed a "BRIEF IN OPPOSITION TO [APPELLEES'] MOTION TO STRIKE AND SUPPLEMENTAL BRIEF IN OPPOSITION TO [APPELLEES'] MOTION FOR SUMMARY JUDGMENT," and, on the same day, a hearing was held at which the parties' attorneys presented oral arguments to the trial court in support of their respective motions for summary judgment.

On March 8, 1996, the trial court filed a "JUDGMENT ENTRY" in which it found, as to appellees' motion for summary judgment, that they are protected by sovereign immunity pursuant to R.C. 2744.01(C)(2)(a), 2744.02(A), and 2744.03(A), and "the public duty rule is not applicable to this case"; and as to appellants' motion for summary judgment, that "[f]rom the evidence offered by [appellants] the Court cannot conclude that reasonable minds can come to one conclusion on the proximate cause of Mr. Opial's death and therefor[e] [appellant] is not entitled to summary judgment." As to appellees' motion to strike the materials attached to Zygela's affidavit, the trial court found that the issue was moot. Accordingly, the trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. On April 5, 1996, appellants filed a timely notice of appeal.

Appellants assert in their sole assignment of error that appellees are not immune from liability. In support thereof, appellants argue that (1) R.C. 2744.02(A) provides immunity only for the "hands-on" provision of EMS services and not for the "decision-making underlying the determination not to supply the [Rossford EMS] department with defibrillators"; (2) even if R.C. 2744.0(A) does apply to appellees, R.C. 2744.02(B)(4) provides an exception to immunity because appellees made the decision "not to purchase defibrillators on government grounds, i.e., the Rossford Town Hall, or wherever they meet"; (3) R.C. 2744.03 is inapplicable in this case because appellees' acts were done with "malicious purpose, in bad faith, [and] in a wanton or reckless manner"; and (4) alternatively, appellees are not immune pursuant to R.C. Chapter 2744 "because at issue is not the *decision* to create an EMS unit (which is arguably subject to immunity), but, instead, the improper *implementation* of that decision."

Appellees respond that R.C. 2744.02 is "*obviously* applicable" in this case because (1) emergency medical services are not restricted solely to the "hands-on" emergency services provided by EMS personnel; (2) "legislative decision-making and discretion" such as deciding whether to provide defibrillators to EMS units "have consistently been protected under Ohio's doctrine of sovereign

immunity"; (3) the decision not to equip the EMS unit with a defibrillator was a discretionary decision and not a "faulty implementation" of the "more general decision to create an EMS"; (4) none of the exceptions to immunity set forth in R.C. 2744.02(B) applies to appellees; (5) even if one or more of the exceptions to liability did apply, appellees are still immune from liability pursuant to R.C. 2744.03; and (6) even if appellees are not immune pursuant to R.C. Chapter 2744, "appellant[s] failed to demonstrate that the City Council's decisions regarding equipping the Rossford EMS was the *proximate cause* of the decedent's death."

Appellants reply that the act for which appellees are to be held liable is the decision not "to provide defibrillators of any kind, contrary to accepted national standards"; appellees' decision not to provide defibrillators constitutes "willful and wanton misconduct"; and "it is self-evident that reasonable minds could find that the failure to equip an EMS unit with defibrillators could directly and proximately result in death."

This court notes at the outset that in reviewing a summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

R.C. 2744.02(A)(1) states:

"For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

R.C. 2744.01 lists specific examples of "governmental functions" including, but not limited to, "[t]he provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection." R.C. 2744.01(C)(2)(a).

The blanket immunity granted in R.C. 2744.02(A) is qualified by five specific exceptions set forth R.C. 2744.02(B). R.C. 2744.02(B)(4), the relevant section in this case, provides:

"(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function * * *."

The exceptions to immunity set forth in R.C. 2744.02(B) are further subject to specific immunity defenses enumerated in R.C. 2744.03, which states:

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

In their first argument, appellants seek to hold appellees liable for performing a governmental "decision-making" function as opposed to a proprietary function and do not allege that appellees' conduct fell within any of the exceptions to immunity except the one set forth in R.C. 2744.02(B)(4).

Upon consideration of the foregoing, this court finds preliminarily that (1) R.C. 2744.02(A) provides immunity for *all* governmental and proprietary functions of a political subdivision, unless one of the exceptions set forth in R.C. 2744.02(B) applies; and (2) the examples of a "governmental function" set forth in R.C. 2744.01(C)(2)(a) do not distinguish between the "decision-making" and "hands-on" aspects of the provision of EMS services.

As to appellants' second argument, this court has previously interpreted the exception set forth in 2744.02(B)(4) to mean that political subdivisions are liable for the negligence of their employees only if the injury caused by such negligence actually occurs "within or on the grounds of buildings used in connection with governmental functions." *Amborski v. Toledo* (1990), 67 Ohio App.3d 47, 50, 585 N.E.2d 974, 976. In addition, Ohio courts have held that the language of R.C. 2744.02(B) "support[s] the conclusion that subsection (B)(4) only applies to the maintenance of governmental property" and not to the decision-making which may take place on such property. *Doe v. Jefferson Area Local School Dist.* (1994), 97 Ohio App.3d 11, 13, 646 N.E.2d 187, 188, citing *Zellman v. Kenston Bd. of Edn.* (1991), 71 Ohio App.3d 287, 593 N.E.2d 392,

As to appellants' third argument, it is undisputed in this case that (a) appellees exercised their discretion not to acquire a defibrillator for the Rossford EMS unit and (b) appellees are not liable for any injury which results from that decision unless it was made with "malicious purpose, in bad faith, or in a wanton or reckless manner."

The term "malice" has been defined as the "willful and intentional design to do injury, or the intention or desire to harm another." *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363, 367. The term "bad faith" "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the

nature of fraud." *Id.* at 454, 602 N.E.2d at 367, citing *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, at paragraph two of the syllabus.

The Supreme Court of Ohio has stated that willful conduct "implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse," and that a wanton act is "an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation, or property of others." *State v. Earlenbaugh* (1985), 18 Ohio St.3d 19, 21–22, 18 OBR 16, 18, 479 N.E.2d 846, 849. An individual acts "recklessly" when " 'he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 708, quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.

As to appellants' fourth argument, in *Enghauser Mfg. Co. v. Eriksson Engineering, Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, which was decided before the enactment of R.C. Chapter 2744, the Supreme Court of Ohio held that, while immunity is a complete defense to an action for an act or omission involving a high degree of official discretion, once that decision has been made, the political subdivision is liable for its negligence in implementing it. *Id.* at 36, 6 OBR at 57, 451 N.E.2d at 232–233. In *Leach v. Dayton* (1994), 98 Ohio App.3d 467, 648 N.E.2d 895, the Montgomery County Court of Appeals stated that the exception to immunity set forth in *Enghauser* "was in effect codified in R.C. 2744.03(A)(3)," which provides a political subdivision with immunity if the "action or failure to act" by an employee "that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." *Id.,* 98 Ohio App.3d at 470, 648 N.E.2d at 897.

It is undisputed in this case that the applicable statute is R.C. 2744.03(A)(5), which provides for conditional immunity in cases where a political subdivision exercises its discretion in deciding how to acquire and allocate resources.

This court has reviewed the entire record of proceedings before the trial court and upon consideration thereof, our preliminary findings above, and the law, finds that (1) the exception set forth in R.C. 2744.02(B)(4) does not apply to appellees' decision not to purchase defibrillators for the Rossford EMS unit; (2) appellants have not shown that appellees acted with "malicious purpose, in bad faith, or in a wanton or reckless manner" when they decided not to purchase defibrillators; (3) the distinction between governmental decision-making and implementation of that

decision made by the Supreme Court in *Enghauser* is inapplicable in this case; and (4) there remains no genuine issue of fact and, when construing the evidence most strongly in appellants' favor, reasonable minds can only conclude that appellees are entitled to summary judgment as a matter of law. Accordingly, appellants' assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has been done the parties complaining, and the judgment of the Wood County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellants.

*Judgment affirmed.*

MELVIN L. RESNICK, P.J., and HANDWORK, J., concur.